# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| MATTRESS SAFE, INC., | Civil Action File No.: |
|      Plaintiff, | |
| v. | ——————————— |
| HOSPI-TEL MFG. CO., | **JURY TRIAL DEMANDED** |
|      Defendant. | |

## <u>COMPLAINT</u>

Plaintiff Mattress Safe, Inc. ("Mattress Safe") states its Complaint against Defendant Hospi-Tel Mfg. Co. ("Defendant" or "Hospi-Tel") as follows:

1.     This is an action for:   (a) trademark infringement and unfair competition under (i) the trademark laws of the United States, Title 15, United States Code, (ii) Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-371 *et. seq.*, and (iii) the common law of Georgia; and (b) a declaratory judgment that Mattress Safe is entitled to not renew its purported "Exclusive Distributorship Agreement" with Hospi-Tel as of January 1, 2013.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over all causes of action set forth herein pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. §§ 1338, 2201, and 2202.

3.     This Court has personal jurisdiction over Defendant Hospi-Tel due to Defendant's contacts within the State of Georgia arising from Defendant's (a) transacting and/or having transacted business within in this judicial district by, among other things, having its principal travel to this jurisdiction to transact business, negotiating and entering into two separate bedding product distributorships agreements with Mattress Safe in this judicial district (both of which are governed by and invoke the protections of Georgia law), (b) continuing to do business with Mattress Safe in this judicial district, (c) offering its products and/or services to customers, affiliates, partners, and/or retailers in this judicial district, and (d) infringing Mattress Safe's trademarks within this State. Defendant, therefore, has continuous and systematic contacts within this judicial district by way of such transactions and occurrences or has established sufficient minimum contacts with Georgia for this Court to have personal jurisdiction over Defendant.

4.     Venue is proper in this judicial district and division pursuant to 28 U.S.C. §§ 1391 and 1400.

## THE PARTIES

5.     Plaintiff Mattress Safe is a Georgia Corporation having a principal place of business at 1950 Kelly Mill Road, Cumming, Georgia 30040, within this judicial district.

6.     Mattress Safe manufactures, markets, and sells bedding products, including mattress encasements, box spring encasements, and pillow encasements, and related bedding products in this judicial district and throughout the United States.

7.     Mattress Safe is the owner of trademark rights in and to numerous trademarks for bedding products, including but not limited to, MATTRESS SAFE, KLEENCOVER, SOFCOVER, and the following MATTRESS SAFE and Design trademark:



8.     Mattress Safe is the owner, by assignment, of all right, title, and interest in and to the following registered trademarks:

a.     United States Reg. No. 3224992 for "MATTRESS SAFE," registered in connection with the following goods:  bed products, namely, mattress covers, mattress pads, bed pads, and pillow covers;

b.     United States Reg. No. 3184575 for "MATTRESS SAFE and Design" registered in connection with the following goods:  bed products, namely mattress covers and mattress pads, and depicted as:



;

c.     United States Reg. No. 3507477 for "KLEENCOVER," registered in connection with the following goods:  bedding products, namely, mattress covers, box spring covers, and pillow covers; and

d.     United States Reg. No. 3149778 for "SOFCOVER," registered in connection with the following goods:  bed products, namely mattress covers and mattress pads;

collectively referred to herein as "the Mattress Safe Marks."  *See* Exhibit A.

9.     Defendant Hospi-Tel is a Delaware corporation having a principal place of business at 545 North Arlington Avenue #7, East Orange, New Jersey 07017.  Upon information and belief, Defendant may be served via service upon its registered agent, The Corporation Trust Company, at 1209 Orange Street, Wilmington, Delaware 19801.

10.     Upon information and belief, Defendant has and continues to infringe Mattress Safe's trademark rights in the State of Georgia, within this judicial district, and elsewhere throughout the United States.

## THE CONTROVERSY

11.     Over eight years ago, Mattress Safe adopted the distinctive Mattress Safe Marks to market and sell bedding products.   For at least eight years Mattress Safe has marketed and sold bedding products using its MATTRESS SAFE, MATTRESS SAFE and Design, and SOFCOVER marks.   For at least five years Mattress Safe has marketed and sold bedding products using its KLEENCOVER mark.  Examples of such uses are provided herein as Exhibit B.

12.     Mattress Safe's products comprising Mattress Safe's MATTRESS SAFE, MATTRESS SAFE and Design, and SOFCOVER marks have been advertised and distributed continuously throughout the United States for at least approximately eight years.  Mattress Safe's products comprising Mattress Safe's

KLEENCOVER Mark have been advertised and distributed continuously throughout the United States for at least approximately five years. *See* Exhibit A.

13.     Mattress Safe first used the Mattress Safe Marks on bedding products long before the Defendant first used at least the same KLEENCOVER and SOFCOVER trademarks in connection with its own name. Mattress Safe is the original and sole owner of the Mattress Safe Marks.

14.     The Mattress Safe Marks are highly distinctive.

15.     Mattress Safe, through its significant effort, skill, and expertise, has acquired and now enjoys substantial goodwill and a valuable reputation in the distinctive Mattress Safe Marks. The maintenance of standards of quality and excellence by Mattress Safe has contributed to this valuable goodwill and reputation throughout the United States.

16.     In addition to be inherently distinctive, as a result of Mattress Safe's long, exclusive, continuous, and wide-spread use and advertising of the Mattress Safe Marks, the Mattress Safe Marks have become associated with Mattress Safe. Mattress Safe's customers and the general public associate the Mattress Safe Marks as denoting that the articles comprising such trademark originate from a single source, *i.e.*, Mattress Safe.

17.     After Mattress Safe established rights to the Mattress Safe Marks, in 2007 Defendant adopted and used the Mattress Safe SOFCOVER and KLEENCOVER Marks on products in Georgia and in interstate commerce for the sale of Mattress Safe's bedding products, solely in connection with Defendant's name and not Mattress Safe's.  Mattress Safe at that time alerted Defendant of the trademark infringement, at which point Defendant assured Mattress Safe that the material in question would be amended to accurately reflect Mattress Safe's ownership and name in connection with the SOFCOVER and KLEENCOVER marks.

18.     After Mattress Safe established rights to the Mattress Safe Marks, and at least since December 2010, Defendant adopted and used the Mattress Safe SOFCOVER and KLEENCOVER Marks on products in Georgia and in interstate commerce for the sale of Mattress Safe's bedding products, in connection with Defendant's name instead of Mattress Safe's.  Examples of Defendant's use of the KLEENCOVER and SOFCOVER Marks in connection with Defendant's name and/or without Mattress Safe's name are attached hereto as Exhibit C.

19.     Defendant continues to market and sell bedding products using the Mattress Safe SOFCOVER and KLEENCOVER Marks on products solely in

connection with Defendant's name, and without attribution or identification of Mattress Safe as the source of those products.

20.    Before adopting and during adoption of its infringing trademark usage, Defendant was aware of Mattress Safe's ownership of and rights in the Mattress Safe Marks in its bedding products due at least to communication between Defendant and Mattress Safe in 2007 relating to Defendant's infringing trademark usage in marketing material at that time.

21.    Defendant has been made aware on multiple occasions since 2007 of Mattress Safe's ownership of and rights in the Mattress Safe Marks in its bedding products due at least to an exchange of correspondence between Defendant and Mattress Safe in 2012 relating to Defendant's infringing trademark usage in marketing material.  *See* Exhibit D.

22.    Mattress Safe's predecessor in name, Mattress Safe, LLC, and Defendant entered into a Distributor Agreement on September 20, 2006 ("the First Distributorship Agreement").  *See* Exhibit E.  The First Distributorship Agreement states, "This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia."  *Id*. at 3, §16.

23.    Subsequent to the execution of the First Distributor Agreement by Mattress Safe, LLC and Defendant, Mattress Safe and Defendant entered into a so-

called "Exclusive Distributorship Agreement" on November 18, 2008 ("the Second Distributorship Agreement"). *See* Exhibit F. The Second Distributorship Agreement states, "This agreement shall be governed and construed in accordance with the laws of the State of Georgia with Venue in the State of Georgia. If a court case arises between the two (2) parties, the part [sic] found guilty [sic] will pay all court costs and attorney fees. Any disagreements or disputes will first be subjected to arbitration selected by both parties." *Id*. at 6, §13.

24.     The Second Distributorship Agreement contains no term provision, except to provide as follows:

> This Agreement shall continue through the First Expiration Date and shall renew without further action with exception to Paragraph 4 (a) and (b) for successive two-year periods provided that in the two years prior to the First Expiration Date and any Subsequent Expiration Date Distributor has purchased from Manufacturer not less than Specified Units established in each category in schedule C....

*Id*. at 5, §11. The Second Distributorship Agreement defines the term "First Expiration Date" to mean December 31, 2010. *See id.* at 2, §1(d). The Second Distributorship Agreement defines the term "Subsequent Expiration Date" to mean "as the case may be December 31, 2012, and every December 31 thereafter in an even numbered year." *Id.* at 2, §1(e).

25.     Mattress Safe previously attempted to terminate the Second Distributorship on July 2, 2012 by written notice to Defendant. *See* Exhibit G.

26. Defendant's counsel responded to Mattress Safe on July 12, 2012 by letter, purporting to reject Mattress Safe's attempt at termination of the Second Distributorship and threatening to file "an emergency application for a temporary restraining order and injunctive relief to prevent you from terminating the agreement and contacting any customers."  Exhibit H at 1-2.  The letter from Defendant's counsel also stated, "My client will not stand by as you threaten to breach the contract and act unlawfully."  *Id.* at 2.

27. Via correspondence between the parties' counsel on July 26, 2012, the parties agreed to a 45-day standstill in the attempted termination and threatened emergency application for a temporary restraining order and injunctive relief until September 9, 2012.  *See* Exhibit I.

28. Before and since September 9, 2012, Mattress Safe and Defendant continued to engage in discussions aimed at resolution of their respective issues, including Defendant's misuse and infringement of the Mattress Safe Marks.

29. Being unable to resolve the outstanding issues with Defendant, Mattress Safe informed Defendant that Mattress Safe would not renew the Second Distributorship Agreement at the end of the Subsequent Expiration Date of December 31, 2012 by providing Defendant with affirmative written notice of same on December 10, 2012.  *See* Exhibit J.

## COUNT I:
## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1125(a))

30.     Mattress Safe realleges and incorporates herein the allegations of paragraphs 1 through 21 of this Complaint as if fully set forth herein.

31.     Defendant has adopted, appropriated, and used the Mattress Safe Marks and presently continues to use the Mattress Safe Marks in a manner that is without the permission, authorization, or approval of Mattress Safe.

32.     The adoption, misappropriation and misuse by Defendant of Mattress Safe's distinctive and non-functional Marks within the State of Georgia and across the United States for Defendant's bedding products creates a likelihood of consumer confusion, deception, and mistake, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

33.     Defendant, through its conduct including but not limited to its unauthorized use of the Mattress Safe Marks, will receive the benefit of Mattress Safe's goodwill achieved over time and at great labor and expense by Mattress Safe.   Defendant's misuse of the Mattress Safe Marks will unjustly enrich Defendant and will place Mattress Safe's valuable reputation and goodwill in the hands of Defendant, over whom Mattress Safe has no control.

34.     Defendant's misuse of the Mattress Safe Marks falsely indicates to the consumer public that Defendant and/or Defendant's goods are not related,

connected, sponsored, approved by, or affiliated with Mattress Safe and its goods when in fact they are.

35.     Defendant's activities are likely to cause consumer confusion, mistake, and deception between Mattress Safe's goods and those of Defendant.

36.     Upon information and belief, Defendant's infringement was, and continues to be, willful.

37.     Upon information and belief, Defendant will, if not enjoined by this Court, continue its acts of trademark infringement set forth above, which acts have caused, and will continue to cause, Mattress Safe immediate and irreparable harm. Pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65(a), Mattress Safe is entitled to an Order of this Court enjoining Defendant's unlawful activities.  Mattress Safe has no adequate remedy at law.

38.     As a result of Defendant's conduct set forth above, Mattress Safe has been, and continues to be, irreparably damaged.  Pursuant to 15 U.S.C. § 1117, Mattress Safe is entitled to a judgment for: (1)  Defendant's profits; (2) damages sustained by Mattress Safe; (3) treble damages; (4) such sum as the Court deems just; (5) Mattress Safe's attorney's fees; (6) Mattress Safe's costs of this action; and (7) interest.

**COUNT II:**
**FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))**

39.    Mattress Safe realleges and incorporates herein the allegations of paragraphs 1 through 21 of this Complaint as if fully set forth herein.

40.    Defendant has adopted, appropriated, and used the Mattress Safe Marks and presently continues to use the Mattress Safe Marks in a manner that is without the permission, authorization, or approval of Mattress Safe.

41.    The adoption, misappropriation and misuse by Defendant of Mattress Safe's distinctive Marks within the State of Georgia and across the United States for Defendant's bedding products constitutes unfair competition  in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

42.    By Defendant's above-noted conduct, Defendant will receive the benefit of Mattress Safe's goodwill achieved over time and at great labor and expense by Mattress Safe.  Defendant's use of the Mattress Safe Marks will unjustly enrich Defendant and will place Mattress Safe's valuable reputation and goodwill in the hands of Defendant, over whom Mattress Safe has no control.

43.    Defendant's above-noted conduct falsely indicates to the consumer public that Mattress Safe's goods are manufactured by and exclusively available from Defendant and that Mattress Safe's goods have no affiliation, connection, or association with Mattress Safe, when in fact they do.

44.     Defendant's activities are likely to cause consumer confusion, mistake, and deception between Mattress Safe's goods and those of Defendant.

45.     Defendant's conduct constitutes a false description or representation of Defendant's products, and is unlawful under 15 U.S.C. §1125(a).

46.     Upon information and belief, Defendant's unfair competition was, and continues to be, willful.

47.     Upon information and belief, Defendant will, if not enjoined by this Court, continue its acts of unfair competition set forth above, which acts have caused, and will continue to cause, Mattress Safe immediate and irreparable harm. Pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65(a), Mattress Safe is entitled to an Order of this Court enjoining Defendant's unlawful activities.  Mattress Safe has no adequate remedy at law.

48.     As a result of Defendant's conduct set forth above, Mattress Safe has been, and continues to be, irreparably damaged.  Pursuant to 15 U.S.C. § 1117, Mattress Safe is entitled to a judgment for: (1)  Defendant's profits; (2) damages sustained by Mattress Safe; (3) treble damages; (4) such sum as the Court deems just; (5) Mattress Safe's attorney's fees; (6) Mattress Safe's costs of this action; and (7) interest.

## COUNT III:
## FALSE DESIGNATION OF ORIGIN AND
## FALSE DESCRIPTION OR REPRESENTATION UNDER
## GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (O.C.G.A. § 10-1-371 *et. seq.*)

49.     Mattress Safe realleges and incorporates herein the allegations of paragraphs 1 through 21 of this Complaint as if fully set forth herein.

50.     Defendant has adopted, appropriated, and used the Mattress Safe Marks and presently continues to use the Mattress Safe Marks in a manner that is without the permission, authorization, or approval of Mattress Safe.

51.     The adoption, misappropriation, and misuse by Defendant of the Mattress Safe Marks in the State of Georgia for its bedding products constitutes a deceptive trade practice in violation of O.C.G.A. § 10-1-372.

52.     By Defendant's conduct, including but not limited to its unauthorized use of the Mattress Safe Marks, Defendant will receive the benefit of Mattress Safe's goodwill achieved over time and at great labor and expense by Mattress Safe.  Defendant's improper use of the Mattress Safe Marks will unjustly enrich Defendant and will place Mattress Safe's valuable reputation and goodwill in the hands of Defendant, over whom Mattress Safe has no control.

53.     Defendant's use of the Mattress Safe Marks causes a likelihood of confusion or of misunderstanding as to the source of Mattress Safe's goods, or a

likelihood of confusion or of misunderstanding as to the goods have not been sponsored, approved, provided, manufactured, or certified by Mattress Safe, when in fact they have.

54.     Defendant's activities cause a likelihood of confusion or of misunderstanding as to the lack of an affiliation, connection, or association with Mattress Safe, and a likelihood of confusion or of misunderstanding as to the lack of certification by Mattress Safe of Mattress Safe's goods.

55.     Upon information and belief, Defendant's infringement was, and continues to be, willful.

56.     Upon information and belief, Defendant will, if not enjoined by this Court, continue its acts of trademark infringement set forth above, which acts have caused, and will continue to cause, Mattress Safe immediate and irreparable harm. Pursuant to O.C.G.A. § 10-1-373, Mattress Safe is entitled to an Order of this Court enjoining Defendant's unlawful activities.  Mattress Safe has no adequate remedy at law.

57.     As a result of Defendant's conduct set forth above, Mattress Safe has been, and continues to be, irreparably damaged.  Pursuant to O.C.G.A. § 10-1-373, Mattress Safe is entitled to a judgment for:   (1) such sum as the Court deems just;

(2) Mattress Safe's attorney's fees; (3) Mattress Safe's costs of this action; and (4) interest.

## COUNT IV:
## COMMON LAW MISAPPROPRIATION AND UNFAIR COMPETITION

58.     Mattress Safe realleges and incorporates herein the allegations of paragraphs 1 through 21 of this Complaint as if fully set forth herein.

59.     Mattress Safe and its predecessors have established common law rights to the common law marks MATTRESS SAFE, MATTRESS SAFE and Design, SOFCOVER, and KLEENCOVER marks by use of the mark in commerce in Georgia in connection with bedding products.

60.     Defendant has adopted, appropriated, and used the Mattress Safe Marks and presently continues to use the SOFCOVER and KLEENCOVER marks in a manner that is without the permission, authorization, or approval of Mattress Safe.

60.     The unauthorized use by Defendant of the SOFCOVER and KLEENCOVER marks in respect to the sale of bedding products is likely to cause confusion, or to cause mistake, or to deceive.

61.     The establishment of Mattress Safe's common law rights to the mark SOFCOVER and KLEENCOVER marks precede Defendant's unauthorized use of the SOFCOVER and KLEENCOVER marks.

62.    Defendant will, if not preliminarily and permanently enjoined by this Court, continue its acts of trademark infringement as set forth above, thereby deceiving the public, trading on Mattress Safe's goodwill and causing Mattress Safe immediate and irreparable harm, damage, and injury.  Mattress Safe is entitled to an Order of this Court enjoining Defendant's unlawful activities.  Mattress Safe is also entitled to the profits that Defendant has made from this infringement.

**COUNT V:**
**DECLARATORY JUDGMENT (28 U.S.C. §§2201, 2202)**

63.    Mattress Safe realleges and incorporates herein the allegations of paragraphs 1 through 10 and 22 through 29  of this Complaint as if fully set forth herein.

64.    Mattress Safe brings this claim for a declaratory judgment under both Fed. R. Civ. P. 57 and 28 U.S.C. §§2201, 2202.

65.    This declaratory judgment action will serve a useful purpose in clarifying and settling legal relations in issue and will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding.

66.    Because Defendant disputes whether Mattress Safe has the right to terminate or not renew the Second Distributorship Agreement, a declaratory judgment will clarify the rights and obligations of the parties.

67.   An actual controversy exists between Mattress Safe and Defendant on whether Mattress Safe has the right to not renew the Second Distributorship Agreement pursuant to §11 of the Second Distributorship Agreement.

68.   Pursuant to consent of Defendant given by §13 of the Second Distributorship Agreement, compliance with nonrenewal provisions of §11 of the Second Distributorship Agreement should be interpreted according to Georgia state law, with venue for the dispute in the State of Georgia.

69.   Under Georgia law, appropriate and affirmative action has been taken by Mattress Safe not to renew the Second Distributorship Agreement and its option not to renew has been validly exercised.

70.   Even if this Court finds that the option to not renew was not validly exercised pursuant to the terms of the Second Distributorship Agreement, then because the Second Distributorship Agreement lacks a finite term provision, the Second Distributorship is terminable at will by either party under Georgia law. Mattress Safe's actions, therefore, constitute termination at will of the Second Distributorship Agreement, because its exercise of the option to not renew is effectively a termination of the Second Distributorship Agreement.

71.     Defendant's conduct, including but not limited to the aforementioned allegations, has created a reasonable apprehension on the part of Mattress Safe that Defendant will initiate legal proceedings against Mattress Safe as a result of Mattress Safe's election not to renew the Second Distributorship Agreement.

72.     As a result of Defendant's conduct set forth above, Mattress Safe has been, and continues to be, under imminent threat of suit from Defendant.

73.     In view of Defendant's express rejection of Mattress Safe's lawful termination of the Second Distributorship Agreement and Defendant's allegations of breach of said Agreement by Mattress Safe, there is an actual, real, definite, concrete, substantial, immediate, and justiciable controversy between the parties.

74.     Mattress Safe is entitled to a declaration that Mattress Safe has properly not renewed, or in the alternative, terminated, the Second Distributorship Agreement.

75.     Mattress Safe is further entitled to recovery of all reasonable and necessary attorneys' fees as allowed under Georgia law and the Declaratory Judgment Act, as well as contemplated by §13 of the Second Distributorship Agreement, for the necessary declaration requested herein.

## PRAYER FOR RELIEF

WHEREFORE, Mattress Safe prays that the Court enter judgment in its favor and against Defendant follows:

a.      That the Mattress Safe Marks be adjudged to be protectable and infringed by Defendant;

b.      That Defendant be ordered to pay profits from its infringement of the Mattress Safe Marks, with interest;

c.      That Defendant be ordered to pay all damages sustained by Mattress Safe on account of, *inter alia*, Defendant's trademark infringement, unfair competition, and injury to Mattress Safe's business reputation pursuant to 15 U.S.C. §1051 *et. seq.*, with interest;

d.      That such damages assessed against Defendant be trebled as provided by 15 U.S.C. § 1117;

e.      That Defendant be required to pay to Mattress Safe monetary damages to be used for corrective advertising to be conducted by Mattress Safe;

f.      That Defendant be ordered to pay Mattress Safe's attorney's fees and costs resulting from (1) Defendant's infringement of the Mattress Safe Marks, with interest, and (2)the necessary declaration requested herein;

g.     That Defendant, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with it be preliminarily and permanently enjoined and restrained from further infringement of the Mattress Safe Marks;

h.     That Defendant be directed to file with the Court and serve on Mattress Safe, no later than thirty (30) days after the issuance of an injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

i.      That an accounting be conducted and judgment be rendered against Defendant for:

(a)     all profits received by Defendant, directly or indirectly, from its sales and/or advertising of any bedding products bearing the Mattress Safe Marks, or any other trademark confusingly similar to the Mattress Safe Marks;

(b)     all damages sustained by Mattress Safe on account of, *inter alia*, Defendants' unfair competition, false designation of origin, false description or representation, trademark infringement, injury to Mattress Safe's business reputation, counterfeiting of Mattress Safe's mark, and/or dilution of the Mattress Safe Marks pursuant to 15 U.S.C. §1117 *et. seq.*, Defendants' violation of 35

U.S.C. § 292, and Defendants' deceptive trade practices and false advertising under Georgia law; and

      (c)    actual compensatory damages in an amount not presently known, but to be computed during the pendency of this action; and

    j.    That Defendant be ordered to pay prejudgment and post-judgment interest;

    k.    That the Court declare that Mattress Safe has properly not renewed, or in the alternative, terminated, the Second Distributorship Agreement; and

    k.    That Mattress Safe be granted such other and additional relief as the Court deems just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Mattress Safe demands a trial by jury of all issues triable of right by a jury.

This 10th day of December, 2012.

> /s/ Cynthia J. Lee
> Cynthia J. Lee
> Georgia Bar No. 442999
> cynthia.lee@thomashorstemeyer.com
> Eric G. Maurer
> Georgia Bar No. 478199
> eric.maurer@thomashorstemeyer.com
> **THOMAS | HORSTEMEYER, L.L.P.**
> 400 Interstate North Parkway, SE
> Suite 1500
> Atlanta, Georgia  30339
> Telephone: (770) 933-9500
> Facsimile: (770) 951-0933
>
> Attorneys for Plaintiff Mattress Safe, Inc.

*1756619*